UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| U.S. BANK, NATIONAL ASSOCIATION, <br><br> Plaintiff, <br><br> vs. <br><br> COUNTRYSIDE HOMEOWNERS ASSOCIATION et al., <br><br> Defendants. | 2:15-cv-01463-RCJ-GWF <br><br> **ORDER** |

This case arises out of a homeowners' association foreclosure sale. Pending before the Court is a Motion for Summary Judgment (ECF No. 29). The Court denies the motion.

## I.   FACTS AND PROCEDURAL HISTORY

In 2005, Jayson Barangan gave Countrywide Home Loans, Inc. ("Countrywide") a promissory note for $228,800 (the "Note") to purchase real property at 8543 Ebony Hills Way, Las Vegas, Nevada, 89123 (the "Property"), secured by a deed of trust (the "DOT") against the Property. (Compl. ¶¶ 7, 12, ECF No. 1). The DOT was later assigned to Plaintiff U.S. Bank, National Association ("US Bank"). (*Id.* ¶ 13). Barangan has defaulted with over $228,580.16 due on the Note, and US Bank intends to foreclose the DOT against the Property. (*Id.* ¶¶ 14–16).

Defendant Countryside Homeowners' Association (the "HOA") has completed its own foreclosure sale, however. (*See id.* ¶¶ 2, 17–27). The HOA caused its agent Nevada Association

Services ("NAS"), to record a notice of delinquent assessment lien (the "NDAL") in 2010 indicating that $738 was due, which amount included late fees, collection fees, and interest totaling $554. (*Id.* ¶ 17). The HOA later caused NAS to record a notice of default and election to sell (the "NOD"), indicating that $1,773 was due, without specifying what amount was due for assessment fees versus interest, collection costs, etc., and without specifying the superpriority amount of the HOA's lien. (*Id.* ¶ 18). The HOA later caused NAS to record a notice of sale (the "NOS"), scheduling a sale for June 24, 2011 and indicating that $3,116.42 was due, without specifying what amount was due for assessment fees versus interest, collection costs, etc., and without specifying the superpriority amount of the HOA's lien. (*Id.* ¶ 19). On January 6, 2012, the HOA sold the Property to itself for $5,259.27, less than 3% of the outstanding principal balance on the Note. (*Id.* ¶¶ 25–26). Defendant KK Real Estate Investment Fund, LLC ("KK") obtained the Property from the HOA via quitclaim deed on May 7, 2013. (*Id.* ¶¶ 3, 27).

US Bank sued the HOA and KK in this Court for: (1) quiet title based on, *inter alia*, violations of due process and commercial unreasonableness; (2) violation of Nevada Revised Statutes section ("NRS") 116.1113; and (3) common law wrongful foreclosure, asking the Court in the alternative to set aside the sale or to declare that it did not extinguish the DOT.[1] KK filed counterclaims for quiet title and cancellation of instruments. The HOA moved to dismiss, and the Court denied the motion, ruling: (1) although Barangan might be entitled to intervene if he were to so move under Rule 24, he was not a necessary party under Rule 19; (2) non-exhaustion under NRS 38.310 did not appear on the face of the Complaint; and (3) noncompliance with Chapter 116 and bad faith with respect to the Covenants, Conditions, and Restrictions ("CC&R") had been sufficiently pled. The HOA has now moved for defensive summary judgment.

---

1 The fourth claim for injunctive relief is not a separate cause of action but a prayer for relief, and no motion for preliminary injunctive relief is pending.

## II.     LEGAL STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme.  The moving party must first satisfy its initial burden.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied and the court needn't consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  If the moving party meets its initial burden, the burden then shifts to the nonmoving party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute,

the nonmoving party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50. Notably, facts are only viewed in the light most favorable to the nonmoving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007).  That is, even where the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

///

///

///

///

## III. ANALYSIS

### A. Non-exhaustion under NRS 116.1113

First, the HOA asks the Court to grant it summary judgment against the NRS 116.1113 claim based on US Bank's failure to abide by state law pre-litigation exhaustion requirements. The HOA invokes the following statute:

> No civil action based upon a claim relating to:
>
> (a) The interpretation, application or enforcement of any covenants, conditions or restrictions applicable to residential property or any bylaws, rules or regulations adopted by an association; or
>
> (b) The procedures used for increasing, decreasing or imposing additional assessments upon residential property,
>
> may be commenced in any court in this State unless the action has been submitted to mediation or, if the parties agree, has been referred to a program pursuant to the provisions of NRS 38.300 to 38.360, inclusive, and, if the civil action concerns real estate within a planned community subject to the provisions of chapter 116 of NRS or real estate within a condominium hotel subject to the provisions of chapter 116B of NRS, all administrative procedures specified in any covenants, conditions or restrictions applicable to the property or in any bylaws, rules and regulations of an association have been exhausted.
>
> 2. A court shall dismiss any civil action which is commenced in violation of the provisions of subsection 1.

Nev. Rev. Stat. § 38.310.

Because the statute is silent on pleading requirements, the Court previously ruled that it was an affirmative defense and denied the HOA's motion to dismiss because non-exhaustion did not appear on the face of the Complaint. The Court noted it would be inclined to grant summary judgment to the HOA on the issue if it could show that US Bank had not sought mediation. A determination of the NRS 116.1113 claim would require the interpretation and application of the CC&R, which is also true of the quiet title and wrongful foreclosure claims insofar as they are based on alleged violations of NRS 116.1113.

Because the HOA would bear the burden of proof at trial as to the affirmative defense of non-exhaustion, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co.*, 213 F.3d at 480. The HOA has provided no evidence of non-exhaustion, e.g., via an answer to an interrogatory, deposition, etc., and it therefore has not satisfied its initial burden. The Court therefore denies summary judgment to the HOA as to the non-exhaustion issue. Because the Court denies the HOA's motion on this basis, it needn't address US Bank's arguments in opposition that the state law exhaustion requirement under NRS 38.310 is preempted by 28 U.S.C. § 1332 or that the statute does not apply here.

### B.   Application of NRS 116.1113

Next, the HOA argues that NRS 116.1113 is no barrier to the foreclosure here, because NRS 116.1104 and NRS 116.1206 provide that CC&R provisions inconsistent with the provisions of Chapter 116 are void, and the provision of the CC&R invoked by US Bank is inconsistent with the statutory priority scheme of NRS 116.3116. The basis of US Bank's claim under NRS 116.1113 is that the CC&R subordinate the HOA's lien to first mortgages, and it has provided evidence to this effect:

> **Mortgage Protection.** Notwithstanding all other provisions hereof, no lien created under this Article VII, nor the enforcement of any provision of this Declaration shall defeat or render invalid the rights of the Beneficiary under any Recorded First Deed of Trust encumbering a Unit, made in good faith and for value . . . .

(CC&R § 7.6, Aug. 1, 2002, ECF No. 30-4). This provision would appear to preserve the DOT by prior contractual agreement notwithstanding NRS 116.3116. The HOA has adduced no contrary evidence, and it is plain from the CC&R that first mortgagees are intended third-party beneficiaries of the mortgage protection provision. *See Canfora v. Coast Hotels & Casinos, Inc.*,

121 P.3d 599, 605 (Nev. 2005) (quoting *Jones v. Aetna Cas. and Sur. Co.*, 33 Cal. Rptr. 2d 291, 296 (1994)) ("Whether an individual is an intended third-party beneficiary, however, depends on the parties' intent, 'gleaned from reading the contract as a whole in light of the circumstances under which it was entered.'"); *Morelli v. Morelli*, 720 P.2d 704, 705–06 (Nev. 1986) (citing *Lipshie v. Tracy Inv. Co.*, 566 P.2d 819 (Nev. 1977)). The mortgage protection provision was adopted in the 2002 CC&R a decade after NRS 116.3116 was adopted. The drafters of the mortgage protection provision were presumably aware of NRS 116.3116 and wished to eliminate any possibility of confusion over its application in favor of protecting first mortgages.

The HOA argues that NRS 116.1206 preempts the mortgage protection provision:

> 1. Any provision contained in a declaration, bylaw or other governing document of a common-interest community that violates the provisions of this chapter:
>
> (a) Shall be deemed to conform with those provisions by operation of law, and any such declaration, bylaw or other governing document is not required to be amended to conform to those provisions.

Nev. Rev. Stat. § 116.1206(1), (1)(a). In other words, the HOA argues that NRS 116.1206 prevented the HOA from contracting around NRS 116.3116 via the mortgage protection provision. But the relevant statutory provision did not become effective until October 1, 2003, *see* S.B. 100, ch. 385, §§ 56, 93(2), 2003 Nev. Stat. 2224, 2255 (2003), and the mortgage protection provision was in effect as of 2002. The version of NRS 116.1206(1) in effect when the mortgage protection provision was adopted limited itself to CC&R provisions created before January 1, 1992. *See* Nev. Rev. Stat. § 116.1206(1) (1999). First mortgagees in 2002 had the right to rely on mortgage protection provisions like the one at issue here when giving their mortgages. The Court will not create Contract Clause issues by reading NRS 116.1206 to apply retroactively so as to invalidate CC&R provisions adopted between January 1, 1992 and October

1, 2003. *Cf. Eagle SPE NV I, Inc v. Kiley Ranch Cmtys.*, 5 F. Supp. 3d 1238, 1244–58 (D. Nev. 2014) (Jones, J.).

There is no need to address the Contract Clause issue directly, because the 2003 statute does not operate retroactively to limit the 2002 mortgage protection provision here with the clarity required to overcome the presumption against retroactive effect. *See Sandpointe Apartments v. Eighth Judicial Dist. Court*, 313 P.3d 849, 853 (Nev. 2013). Although the statute indicates it is retroactive in one respect, it is only retroactive with respect to underlying statutes CC&R are alleged to violate. *See* Nev. Rev. Stat. § 116.1206(1)(b) ("[i]s superseded by the provisions of this chapter, regardless of whether the provision contained in the declaration, bylaw or other governing document became effective *before the enactment of the provision of this chapter that is being violated*." (emphasis added)). That aspect of retroactivity needn't be invoked here, because the mortgage protection provision alleged to violate Chapter 116 post-dates the lien-priority statute. The important issue here is that NRS 116.1206(1)(b) is not itself retroactive. Parties to CC&R adopted on or after October 1, 2003 were on notice that they would bear the risk of changing statutes going forward. But parties to CC&R contracting before October 1, 2003 had an expectation of the continued vitality of their CC&R provisions without being subject to retroactive nullification by the state via the preemption of contractual clauses at odds with Chapter 116, regardless of the respective dates of the relevant CC&R provisions and conflicting statutes.

In summary, NRS 116.1206 applies to CC&R provisions adopted on or after October 1, 2003, regardless of the respective dates of CC&R provisions and conflicting provisions of Chapter 116. But if the Court were to find that NRS 116.1206 also applied to CC&R provisions adopted before October 1, 2003, it would almost certainly create Contract Clause problems. And

the legislative history indicates no intent for the statute to operate retroactively in that way. *See* http://www.leg.state.nv.us/Division/ Research/Library/LegHistory/LHs/2003/SB100,2003.pdf. The HOA is therefore not entitled to summary judgment against the claim under NRS 116.1113.

### C. Wrongful Foreclosure

Wrongful foreclosure claims in the present context typically rely on an HOA's alleged wrongful rejection of the tender of the superpriority amount of the default prior to the HOA foreclosure sale. In this case, US Bank has provided no evidence of any tender or attempted tender. It appears to argue that the HOA's foreclosure and subsequent position that the DOT was extinguished constitute wrongful foreclosure. It also notes that inadequacy of sales price can support a wrongful foreclosure action by a junior lienor:

> If the real estate is unavailable because title has been acquired by a bona fide purchaser, the issue of price inadequacy may be raised by the mortgagor or a junior interest holder in a suit against the foreclosing mortgagee for damages for wrongful foreclosure.

Restatement (Third) of Prop.: Mortgages § 8.3 cmt. b (1997). The Court finds that the Nevada Supreme Court would likely entertain such a theory of wrongful foreclosure, as it has typically followed the Restatement. The Court therefore denies summary judgment to the HOA on the wrongful foreclosure claim.

### D. Equitable Issues

Although the HOA does not explicitly attack the quiet title claim, it makes equitable arguments against the wrongful foreclosure claim under *Shadow Wood Homeowners Assoc., Inc. v. N.Y. Cmty. Bancorp, Inc.*, 132 Nev. Adv. Op. 5, 2016 WL 347979 (2016) and *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 919–20 (Nev. 1977) that are better addressed to the quiet title claim.

///

### 1. *Shadow Wood*

The Nevada Supreme Court recently ruled that an association's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sale price and "fraud, unfairness, or oppression." *Shadow Wood Homeowners Assoc., Inc. v. N.Y. Cmty. Bancorp, Inc.*, 366 P.3d 1105, 1110–13 (Nev. 2016). The Court remanded for further fact-finding in that case but noted that the general rule for gross inadequacy was 20% of fair market value, that the Court had in the past approved sales for as low as 28.5%, and that the apparent 23% ratio in the case before it was not "obviously" inadequate. *See id.* at 1112 (citing *Golden v. Tomiyasu*, 387 P.2d 989, 993 (Nev. 1963); Restatement (Third) of Prop.: Mortgages § 8.3 cmt. b (1997)). The Court noted that a foreclosing entity's (or its agent's) behavior with respect to a first mortgagee's attempts to redeem the superpriority portion of an association lien before sale is relevant to fraud, unfairness, or oppression. *See id.* at 1113.

#### a. Gross Inadequacy of Sale Price

The HOA has not satisfied its initial burden on summary judgment as to adequacy of the sale price. The HOA has adduced no evidence of the fair market value of the Property at the time of the foreclosure sale. Even if it had provided such evidence, Plaintiff would have satisfied its shifted burden on the issue by providing evidence that the sale price was less than 3% the secured amount. (*See* DOT 2, ECF No. 30-2 (securing $228,800); Foreclosure Deed, ECF No. 30-8 (indicating a sale for $5,259.27)). Even assuming no down payment and that the fair market value in 2012 was only half the 2005 purchase price—a fair assessment for Nevada real property—the sale price was less than 5% of the fair market value according to this evidence,

1  which is less than one-fourth the amount generally required to avoid a finding of gross

2  inadequacy.

3     b.  **Fraud, Unfairness, or Oppression**

4   The issue in this case is not fraud, but alleged unfairness and oppression.  Proof of tender

5  (or sufficiently attempted tender wrongfully rejected) of the superpriority portion of a lien

6  followed by a denial of the continuing validity of the first mortgage probably constitutes

7  unfairness and oppression under Nevada law, especially where an HOA or its agent attempts to

8  extract thousands of dollars in subpriority amounts from one whose interest is subordinate only

9  to hundreds of dollars in superpriority amounts, under threat of a clouded several-hundred-

10 thousand-dollar deed of trust after sale.  In this case, Plaintiff has provided no evidence of any

11 tender or attempted tender of the superpriority amount of the HOA's lien prior to foreclosure.

12 US Bank argues, however, that the HOA misrepresented the priority of its lien.  Specifically, US

13 Bank argues that the mortgage protection clause of the CC&R misled potential buyers into

14 thinking the DOT would survive the foreclosure sale, so no investors bothered to bid on the

15 Property at a time when the DOT was undersecured.  The Court accepts this argument and finds

16 that the *Shadow Wood* issue must be tried to a jury.

17     2.  **Commercial Unreasonableness of the Sale**

18     In addition to giving reasonable notice, a secured party must, after default, proceed in a commercially reasonable manner to dispose of collateral.  Every
19 aspect of the disposition, including the method, manner, time, place, and terms, must be commercially reasonable.  Although the price obtained at the sale is not
20 the sole determinative factor, nevertheless, it is one of the relevant factors in determining whether the sale was commercially reasonable.  A wide discrepancy
21 between the sale price and the value of the collateral compels close scrutiny into the commercial reasonableness of the sale.

22 *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 919–20 (Nev. 1977) (citations omitted).

23 Although related, this equitable rule is separate from the equitable rule of *Shadow Wood*.  The

24

*Levers* rule is concerned with the circumstances of the sale generally, as opposed to the treatment of junior lienors in particular. Under *Shadow Wood*, gross inadequacy in price and "fraud, unfairness, or oppression" to the junior lienor are two prongs of a conjunctive test. By contrast, under *Levers* a discrepancy between the sale price and the value of the collateral is only one factor in a totality-of-the-circumstances-type test, although a "wide" discrepancy triggers closer scrutiny of the reasonableness of other aspects of the sale.

As with the *Shadow Wood* issue, the Court reserves this issue for a jury. Plaintiff has provided sufficient evidence to permit a jury to find the sale to have been commercially unreasonable.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 29) is DENIED.

IT IS SO ORDERED.

Dated this 6th day of July, 2016.

_____
ROBERT C. JONES
United States District Judge